United States District Court
Middle District of Florida
Jacksonville Division

**SUSAN GOODRICH,**

    *Plaintiff,*

v.                                                  No. 3:15-CV-1435-J-32PDB

**PARK AVENUE DERMATOLOGY, P.A., ETC.,**

    *Defendants.*

## Report and Recommendation

Before the Court in this case under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, and the Florida Whistleblower's Act, Fla. Stat. §§ 448.101–448.105, is the parties' motion for approval of their settlement, for the Court to retain jurisdiction to enforce its terms, and for dismissal of the case with prejudice. Doc. 16.

## Background

Goodrich worked for the defendants as an aesthetician from February 2008 to November 2015. Doc. 1 ¶ 18. According to her, they forced her to clock out early to avoid a record of overtime hours and threatened to fire her if she did not. Doc. 1 ¶ 23, 24. In October 2015, she notified the director of personnel she should receive overtime compensation and, a week later, complained to the United States Department of Labor. Doc. 1 ¶¶ 27, 28. Less than three weeks later, they fired her. Doc. 1 ¶ 32. She contends they willfully failed to pay overtime compensation owed, Doc. 1 ¶¶ 26, 33, 37–45, and willfully fired her in retaliation for her complaints and because she would not participate in their activities, policies, and practices, Doc. 1 ¶¶ 34, 46–65. In her answers to the Court's interrogatories, she estimates she worked about three overtime hours a week for 148 weeks, for which she should have been paid $67.50 a

week, or a total of $9990 without liquidated damages and $19,980 with liquidated damages. Doc. 9 ¶ 6(c), (d), (e). For the retaliation and whistleblower claims, she estimates she is owed about $4170 a month in back pay, or $8340 a month with liquidated damages, plus non-economic damages. Doc. 9 ¶ 6(e).

The defendants deny liability and assert affirmative defenses, including that they paid Goodrich all wages owed, they acted in good faith and not willfully, she did not comply with applicable employment policies and procedures, and the adverse employment action was not because she exercised a protected right. Doc. 5. They submitted a verified summary of hours and wages spanning November 2012 to December 2015.[1] Doc. 10.

The parties participated in a settlement conference in accordance with the Court's track notice for cases involving FLSA claims, but did not settle the case at that time. Doc. 11. They conducted a case management conference, Doc. 12, the Court entered a scheduling order, Doc. 13, and, after about three months of discovery, they notified the Court they settled the case, Doc. 14. They now seek approval of their settlement of the FLSA claims. Doc. 16.

Under the settlement agreement, the defendants deny liability but agree to pay Goodrich $34,000 in "full and final accord, satisfaction, and final compromise and settlement of [her] claims against the Released Parties for unpaid overtime wages, liquidated damages, front and back pay, interest, court costs, and all other monetary and equitable relief, including attorney's fees." Doc. 16-1 ¶¶ 2, 3, 8. The release does not include "any claims which cannot be waived by law." Doc. 16-1 ¶ 6. The settlement amount will be paid in two checks: one for $28,000 payable to Goodrich for "back wages minus appropriate tax deductions and withholdings" and one for $6000 payable to the firm representing her for attorney's fees. Doc. 16-1 ¶ 2. The parties

---

[1]Goodrich worked no hours after November 13, 2015, but the chart shows she continued to earn wages from regular, sick, holiday, vacation, or other bonus pay until December 12, 2015. Doc. 10 at 4.

represent the latter amount was negotiated independently of the former amount. Doc. 16 at 3. Goodrich's counsel represents he spent 29.70 hours on the case for an actual amount of $8761.50 based on an hourly rate of $295. Doc. 16 at 3. The parties explain no money is allocated for liquidated damages because Goodrich has not identified evidence of willfulness. Doc. 16 at 3.

Under the agreement, the parties "agree to resolve all disputes between them from the beginning of the world to the date of this Agreement," Doc. 16-1 at 3. Goodrich releases "any and all claims, demands, lawsuits obligations, promises, administrative actions and causes of action, both known and unknown, contingent or absolute, in law or in equity, of any kind whatsoever, which [she] ever had, now has, or may have against the Released Parties, for, upon or by reason of any allegation of unpaid wages or other violation of the FLSA, FWA, or comparable state law, arising out of [her] employment with Defendant, pursuant to the FLSA, FWA, or comparable state law." Doc. 16-1 ¶ 5. Goodrich agrees "she has been paid for all hours worked and overtime and minimum wage compensation… and agrees that Defendants do not owe [her] any other monies with regard to compensation associated with hours worked." Doc. 16-1 ¶ 7. The parties agree to keep the details of the litigation and the terms of settlement confidential other than using it as evidence in a case relating to breach of the agreement, disclosing it to the court for approval of the settlement, and disclosing it to any party's attorney, spouse, or accountant, unless otherwise required by court order. Doc. 16-1 ¶ 9.

## Authority

Passed in 1938, the FLSA establishes minimum wages and maximum hours "to protect certain groups of the population from substandard wages and excessive hours which endanger[ ] the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945). If an employee proves that his employer violated the FLSA, the employer must pay him the amount of unpaid wages (for up to two years or three if the employer had

3

intentionally violated the law, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135, 108 S.Ct. 1677, 1682 (1988)), an equal amount as liquidated damages (absent the employer's proof of good faith and reasonable grounds for believing it was not violating the FLSA, 29 U.S.C. § 260), and attorneys' fees and costs. 29 U.S.C. § 216(b).

To foster FLSA's purpose and to prevent an employer from using its superior bargaining position to take advantage of an employee, the Eleventh Circuit placed limits on the ability of private parties to settle a FLSA case. *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306−07 (11th Cir. 2013). To do so, they must present their proposed settlement to the court, and the court must scrutinize it for fairness. *Id.* That requirement applies whether the plaintiff is a current or former employee. *Id.* If the agreement reflects a fair and reasonable compromise over a disputed issue, the court may approve it to promote the policy of encouraging settlement. *Lynn's Food Stores, Inc. v. U.S. ex rel U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982).

A court should presume a settlement is fair and reasonable, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977), and then consider the following factors: (1) the existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the case; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel, *Leverso v. SouthTrust Bank of Ala. Nat. Ass'n*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994).

"FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions." *Silva v. Miller*, 307 F. App'x. 349, 351 (11th Cir. 2009). A court must review the reasonableness of attorney's fees to assure both that counsel is compensated adequately and that no conflict of interest influences the amount the employee recovers. *Id.* Thus, in addition to reviewing a compromise of a FLSA claim, a court must "award a reasonable attorney's fee to [the plaintiff's] counsel." *Id.* at 352. If the parties negotiated attorney's fees separately from the amount to the plaintiff, the court need not undertake a lodestar review of the

4

attorney's fees for reasonableness. *DeGraff v. SMA Behavioral Health Servs., Inc.,* 945 F. Supp. 2d 1324, 1329 (M.D. Fla. 2013) (Corrigan, J.); *Bonetti v. Embarq Mgmt. Co.,* 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

## Analysis

Having reviewed the settlement agreement and accepting the parties' representations as true, I find the agreement is a fair and reasonable compromise of disputed issues.

On the first factor (the existence of collusion behind the settlement), there is no evidence of collusion. Goodrich was represented by attorneys with expertise in employment law. Doc. 16 at 4; *see Lynn's Food,* 679 F.3d at 1354 (FLSA lawsuit settlements are permissible because plaintiffs are likely to be represented by attorneys who can protect their statutory rights and settlements are reached in adversarial context). Goodrich represents she had enough time to review the agreement, consulted with counsel before signing the agreement, and received all the information she needed to "knowingly" execute the agreement. Doc. 16-1 ¶ 15.

On the second factor (the complexity, expense, and likely duration of the case), the case involves a claim for unpaid overtime wages under the FLSA, a claim for retaliation under the FLSA, a claim for a violation of the Florida Whistleblower Act, and a request for declaratory judgment, Doc. 1 ¶¶ 37–80, making it more complex than the typical FLSA case. The parties do not address how long or expensive the case would likely be absent settlement, *see generally* Doc. 16, but it would presumably involve a trial and all expenses typically associated with a trial.

On the third factor (the stage of the proceedings and the discovery completed), the parties have participated in court-ordered discovery, a case-management conference, and a settlement conference, and have initiated party-driven discovery. Doc. 9, Doc. 10, Doc. 11, Doc. 12, Doc. 16 at 2. Because the parties have engaged in discovery, they likely have facts necessary to reach an informed settlement.

On the fourth factor (the probability of Goodrich's success on the merits), the parties agree many disputed issues "will come down to the conflicting testimony of witnesses for both sides." Doc. 16 at 4. They agree "genuine material disputes remain regarding liability" on the unpaid overtime and retaliation claims. Doc. 16 at 4. The proposed settlement agreement provides a "bona fide dispute" exists as to whether the defendants violated the FLSA and the Florida Whistleblower's Act. Doc. 16-1 at 3.

On the fifth and sixth factors (the range of possible recovery and the opinions of counsel), Goodrich contends she is owed $9990 (excluding liquidated damages) in unpaid overtime compensation and approximately $4170 (excluding liquidated damages)[2] a month for lost pay due to retaliation. Doc. 9 at 3, Doc. 16 at 2. She contends her retaliation damages continue to accrue. Doc. 9 at 3. Goodrich was fired about 11 months ago, in November 2015. *See* Doc. 1 ¶ 32. Even without liquidated damages, her potential recovery exceeds the amount of the settlement agreement. Given the existence of disputes and the likelihood that issues would be decided on conflicting testimony, it is possible she would recover nothing. The parties do not state their attorneys' opinions of the settlement agreement, but jointly state the

---

[2] An employee may not waive her right to liquidated damages under the FLSA when there is no genuine dispute about whether she is entitled to them because "[a]llowing the employer to escape liquidated damages by simply giving an employee the wages she was entitled to earn in the first place—or in some cases, less than that—would undermine the deterrent effect of the statutory provisions." *Nall*, 723 F.3d at 1307. The absence of liquidated damages here does not render the settlement agreement unfair because the parties explain Goodrich has not shown evidence to support them and they dispute liability under the FLSA. Doc. 16 at 3, 4. *See Patterson v. Academy Fire Protection, Inc.*, No. 3:13–cv–87–J–34JBT, 2014 WL 169812, at *5–6 (M.D. Fla. Jan. 8, 2014) (unpublished) (settlement reasonable despite absence of liquidated damages where there was a genuine dispute about whether plaintiff was entitled to them and parties agreed there was no evidence to support them).

terms of the settlement agreement are "fair and reasonable under the circumstances." Doc. 16 at 4–5.

On attorney's fees, given the parties' representation they agreed upon the attorney's fees separately, without regard to the amount to Goodrich, Doc. 16 at 3, the court need not undertake a lodestar review. *See DeGraff*, 945 F. Supp. 2d at 1329; *Bonetti*, 715 F. Supp. 2d at 1228. Moreover, $6000 appears reasonable on its face given that Goodrich's counsel necessarily met with her, drafted and filed the complaint, engaged in discovery, engaged in settlement negotiations ultimately resulting in settlement, and jointly filed the current motion, and the amount is less than the amount accrued ($8761.50) under his ordinary hourly rate of $295, *see* Doc. 16 at 3.

Two provisions of the proposed settlement agreement—the release and confidentiality[3] provisions—warrant further discussion.

If an agreement to settle a FLSA overtime claim includes a general release, many judges will not approve the settlement because, without an indication of the value of the released claims, the fairness and reasonableness of the compromise cannot be determined. *See, e.g., Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351−52 (M.D. Fla. 2010). *But see Buntin v. Square Foot Mgmt. Co.*, No. 6:14-cv-1394-Orl-37GJK, 2015 WL 3407866, at *2–3 (M.D. Fla. May 27, 2015) (unpublished) (approving mutual general release because it was supported by separate consideration). And if an agreement to settle a FLSA overtime claim includes a confidentiality provision, many judges will strike the provision because it contravenes the FLSA's purpose and undermines the Department of Labor's efforts to inform employees of their rights. *See, e.g., Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242−43 (M.D. Fla. 2010). *But see Smith v. Aramark Corp.*, No. 6:14-cv-409-Orl-

---

[3]The confidentiality provision, Doc. 16-1 ¶ 9, lost some effect when the parties filed the settlement agreement on the public docket.

22KRS, 2014 WL 5690488, at *3–4 (M.D. Fla. Nov. 4, 2014) (unpublished) (approving confidentiality provision because it was supported by separate consideration).

But if, as here, the agreement includes consideration for the settlement of other, non-FLSA-overtime claims, the same concerns do not warrant disapproving the settlement or striking the offending provisions because the plaintiff agreed to them to settle all of the claims, including those that do not require the court to approve the settlement. See *Edwards v. Agrium Adv. Techs. (U.S.), Inc.*, No. 1:13-cv-00570-MHH, 2014 WL 1233702, at *4 (N.D. Ala. Mar. 25, 2014) (unpublished); *Smith v. Bulls-Hit Ranch & Farm*, No. 3:12-cv-449-J-15TEM, 2013 WL 3833145, at *5 (M.D. Fla. July 23, 2013) (unpublished). Although the agreement here includes ordinarily offending provisions, rejecting it or striking them is unwarranted in light of its encompassment of non-FLSA-overtime claims.

I thus find that the agreement, including its provision of attorney's fees, is a fair and reasonable compromise of disputed issues.

The parties summarily ask the Court to retain jurisdiction to enforce the settlement agreement, Doc. 16 at 5, but did not provide any reason why retention of jurisdiction is warranted. Because the Court usually does not retain jurisdiction to enforce private settlement agreements and the parties have not provided any reason why this case warrants an exception, I recommend denying that request. *See, e.g., McQuillan v. H.W. Lochner, Inc.*, No. 6:12-cv-1586, 2013 WL 6184063, at *1 (M.D. Fla. Nov. 25, 2013) (unpublished) (declining to retain jurisdiction in FLSA case); *Popov v. George & Sons Towing Inc.*, No. 2:12-cv-123, 2013 WL 4028208, at *1 (M.D. Fla. Aug. 7, 2013) (unpublished) (same).

8

## Recommendation[4]

I recommend the Court

1. **grant** the parties' motion, Doc. 16, to the extent it seeks approval of the settlement of the plaintiffs' FLSA claims, finding the settlement is a fair and reasonable compromise of disputed issues;

2. **deny** the parties' motion to the extent it seeks a reservation of jurisdiction to enforce the settlement agreement, Doc. 16 at 5, and

3. **dismiss** the case with prejudice.

**Entered** in Jacksonville, Florida, on October 25, 2016.

*PATRICIA D. BARKSDALE*
*United States Magistrate Judge*

c:   The Honorable Timothy J. Corrigan
     Counsel of Record

---

[4]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.